OTIS ELEVATOR CO. v. CAMERON et al.
(No. 8110.)

(Court of Civil Appeals of Texas. Dallas.
June 29, 1918. Rehearing Denied
Oct. 19, 1918.)

1. APPEAL AND ERROR ☞753(1), 772—FILING BRIEFS AND ASSIGNMENT IN TRIAL COURT—OBJECTIONS TO CONSIDERATION.
    Consideration of assignments of error will not be refused because they and appellant's brief were not filed in the trial court in the time prescribed; it being apparent this occasioned no harm, and motion to dismiss appeal, with opportunity for counter-showing, contemplated by Courts of Civil Appeals Rule 39 (142 S. W. xiii), not being filed.

2. APPEAL AND ERROR ☞722(1) — ASSIGNMENTS OF ERROR—GROUNDS OF MOTION FOR NEW TRIAL.
    An assignment of error, though not a full copy of the ground set up in motion for new trial, will be considered; it with the propositions under it stating enough of the ground to direct the court's attention to, and make plain, the error intended to be assigned.

3. MASTER AND SERVANT ☞124(3) — SAFE PLACE AND APPLIANCES—INSPECTION.
    Duty of employer to furnish employé reasonably safe work place and appliances, as applied to operator of freight elevator, includes the making of tests and inspection for defects.

4. APPEAL AND ERROR ☞930(3) — PRESUMPTION—FINDING ON ISSUE.
    Submission of an issue not having been made or requested, it will be deemed on appeal as found by the court in such way as to support the judgment; there being evidence to sustain such a finding.

5. MASTER AND SERVANT ☞129(2) — INJURY TO SERVANT—PROXIMATE CAUSE.
    As between operator of elevator, injured by defect therein, and his employer, employer's failure to make inspection was proximate cause of the injury, though the defect was structural

and existed when the employer bought the elevator of the manufacturer.

6. NEGLIGENCE ☞61(1)—PROXIMATE CAUSE—CONCURRING CAUSES.
    A cause to constitute proximate cause need not act alone.

7. APPEAL AND ERROR ☞733—ASSIGNMENTS OF ERROR—GENERALITY.
    Assignment of error by one defendant to the rendering of judgment against it in favor of the other defendant as not warranted by facts in evidence, findings or law, being sufficient to direct court's attention to the error complained of, will be considered, notwithstanding its generality.

8. INDEMNITY ☞14 — JOINT WRONGDOERS — CONTRIBUTORY NEGLIGENCE.
    That employé injured through structural defect in elevator, which he was operating, he was guilty of contributory negligence, is immaterial, since judgment for the injury was recovered, on question whether employer can enforce indemnity against manufacturer and seller of elevator.

9. INDEMNITY ☞13(2)—JOINT WRONGDOERS—DEGREES OF BLAME.
    Employer, against whom recovery was had for injury to employé operator of elevator through structural defect therein, may, notwithstanding his negligence in not inspecting, enforce indemnity against elevator manufacturer and seller; it being the original active perpetrator of the wrong, and the negligence of the employer being only passive.

10. INDEMNITY ☞13(2) — IMPLIED CONTRACT —JOINT WRONGDOERS—EXPRESS CONTRACT.
    Right of purchaser of elevator, against whom recovery was had for injury to employé through structural defect, to indemnity against elevator manufacturer and seller, is not affected by express guaranty of material and workmanship for a year and lapse of that time before accident.

11. INDEMNITY ☞13(2)—JOINT WRONGDOERS—KNOWLEDGE.
    That manufacturer and seller of elevator did not know of structural defect therein through which buyer's employé was injured does not affect right of indemnity against it of employer against whom recovery was had for the injury, the agreement to furnish and install implying that the parts would be suitable and safe for use.

12. INDEMNITY ☞13(2) — JOINT WRONGDOER —DEFECTIVE ELEVATOR—EMPLOYER—WORKMAN'S COMPENSATION INSURANCE.
    That an employer whose servant was injured by structural defect in elevator had not taken out workmen's compensation insurance does not affect his right to indemnity against the elevator manufacturer and seller.

Appeal from District Court, Dallas County; W. F. Whitehurst, Judge.

Action by E. C. Harpold and wife against R. L. Cameron and another. From judgment for the named defendant against defendant Otis Elevator Company, that company appealed; and, from judgment for plaintiff against Cameron, he brought error, which was consolidated with the appeal. Affirmed.

John Charles Harris, of Houston, for appellant. Etheridge, McCormick & Bromberg, of Dallas, for appellees Harpold. Wood & Wood and W. W. Hagebush, all of Dallas, for appellee Cameron.

TALBOT, J. E. C. Harpold and wife, L. B. Harpold, instituted suit in the district

court of Dallas county, Tex., against R. L. Cameron and Otis Elevator Company to recover damages sustained by them on account of the death of their minor son, Lloyd L. Harpold. The defendants filed answers to the suit of the plaintiffs, and R. L. Cameron, by cross-action against the Otis Elevator Company, prayed that, in the event any judgment was rendered against him, he have judgment for a like amount over and against said company. The sufficiency of the pleadings is not questioned, and a detailed statement of them is unnecessary. The case was tried before a jury and submitted on special issues. Upon the findings of the jury the court rendered judgment in favor of plaintiffs against the defendant Cameron for the sum of $3,200 and in favor of Cameron on his cross-action against the Otis Elevator Company for the same amount, no judgment being rendered in favor of plaintiffs against said company. From the judgment against it Otis Elevator Company appealed and filed a transcript therein in this court which took the number 7942. R. L. Cameron gave notice of appeal but failed to perfect the same. On January 2, 1918, however, he filed a petition for writ of error and supersedeas bond, and it was agreed by counsel representing the several parties to the suit that in lieu of filing another statement of facts and transcript in this court, in connection with his petition for writ of error, the same statement of facts and transcript with the addition thereto of the petition for writ of error and the supersedeas bond on writ of error might be used in connection with the writ of error proceedings. May 4, 1918, upon motion of the defendants in error Harpold and wife, the writ of error presented by R. L. Cameron was consolidated with the appeal prosecuted by Otis Elevator Company and later a submission taken of the consolidated case.

The material facts deducible from the evidence and found by the jury, in substance, are as follows: The defendant R. L. Cameron was conducting an automobile garage and repair shop at 1324 Jackson street in the city of Dallas, Tex., where he had a force of more than five men working all the time handling and repairing automobiles; but he had not taken out workman's compensation insurance. The defendant Otis Elevator Company was engaged at Houston, Tex., in the manufacture and sale of passenger and freight elevators. On April 3, 1914, Otis Elevator Company and R. L. Cameron entered into a written contract by the terms of which said company, for a consideration of $370, agreed to furnish and erect for Cameron, in the building used by him in the city of Dallas as an automobile garage, a certain hand-power freight elevator capable of lifting a load of 5,000 pounds, and to be used by Cameron in raising and conveying automobiles from the first to the second floor of his garage, a distance of about 17 feet. The written contract for the erection of the elevator contained this clause: "All material and workmanship covered by our guaranty against defects for one year." There was no express warranty or guaranty given in the contract. The elevator was installed and the work completed by the Otis Elevator Company, and on April 25, 1914, Cameron, in the city of Dallas, Tex., signed a written instrument in which he said:

"We have looked over the elevator plant furnished and completed by you in R. L. Cameron building in this city, and so far as we can see everything appears to be satisfactory and in accordance with your contract."

Some time in April, 1915, R. L. Cameron employed Lloyd L. Harpold, a young man about 18 years of age, and son of the plaintiffs E. C. Harpold and L. B. Harpold, to work in the garage and repair shop as helper. As one witness expressed it, "he was a man of general all round work." On May 28, 1815, Lloyd L. Harpold was working at the freight elevator installed by defendant Otis Elevator Company taking up an automobile, which weighed 3,000 or 35 hundred pounds, to the second floor of the garage. When the elevator was within about 12 inches of the second floor, it would not work and stopped, or, as the witnesses expressed it, "stuck." Thereupon Lloyd Harpold went to the assistant foreman, Spencer, and reported that the elevator had "stuck." Then, in company with Spencer, Lloyd Harpold walked back to the elevator, and while he and Spencer were standing there looking up at the elevator, it fell without any warning, and caught Lloyd Harpold underneath and killed him. Spencer narrowly escaped being caught, and probably would have been had he not jumped back. After the accident, an examination was made, and it was discovered that the large "gear wheel" of the elevator, which was made of cast iron, had broken because of a sand hole and crack in it. The sand hole found in the gear wheel was a structural defect and existed at the time of the original installation of the elevator, and but for such defect the elevator would not have given way and fallen.

The specific findings of the jury, in substance, are: (1) That the elevator was "a thing of such a nature that it was reasonably certain to place life and limb in peril when negligently made or set up; (2) that the Otis Elevator Company knew at the time it installed the elevator that the same would be used by persons other than R. L. Cameron, and so used without new tests thereof; (3) that the Otis Elevator Company, in the exercise of ordinary care, could have discovered the existence of the sand hole in the gear wheel at the time of or before its installation; (4) that the elevator when installed and accepted by R. L. Cameron was composed in part of a defective gear wheel in that it had a sand hole in it, and that such defect caused the elevator to collapse on May

28, 1915; (5) that a person, in the exercise of ordinary care and by the tests in general use for the testing of such castings, could have discovered the weakened and defective condition of said gear wheel after the elevator was installed and prior to its collapse and fall on May 28, 1915; (6) that a person, in the exercise of ordinary care in furnishing his employés a reasonably safe place to work, would have inspected the gear wheel, by the application thereto of known ordinary tests, to discover weaknesses or defects therein before the collapse and fall of the elevator; (7) that Lloyd Harpold to a certain extent was guilty of contributory negligence which proximately caused his death; (8) that plaintiffs would have received pecuniary aid from Lloyd Harpold had he not been killed; (9) that the damages recoverable by plaintiffs should be diminished on account of the contributory negligence of Lloyd Harpold one-fifth; (10) that $2,000 paid now to each of the plaintiffs would compensate them for the loss of the pecuniary aid which Lloyd Harpold would have rendered them had he not been killed; (11) that R. L. Cameron relied on the Otis Elevator Company exercising ordinary care to manufacture and install a reasonably safe elevator in his building, and that said company knew that he was relying on it to exercise such care in manufacturing and installing the elevator; (12) that the elevator in question was not in good condition when R. L. Cameron signed his written final acceptance therefor on April 25, 1914; (13) that the Otis Elevator Company did not know of any defect in the elevator at the time of its final acceptance by R. L. Cameron on April 25, 1914, and did not know of any defect in it at the time of the accident on May 28, 1915; (14) that the defect in the gear wheel which broke at the time of the accident on May 28, 1915, could have been discovered by any reasonable inspection; (15) that the Otis Elevator Company made no test as to safety of the elevator for the use for which it was sold and guaranteed before or when it was installed, or after its installation, so far as the jury knew; (16) that the elevator at the time of the accident was in a structurally dangerous condition, in that there was a sand hole and crack in the gear wheel, and that such structurally dangerous condition was created partially by the Otis Elevator Company; (17) that such structurally dangerous condition was the proximate cause of the accident; (18) that if the Otis Elevator Company had made proper inspection and tests of the elevator when it was installed, or during the year elapsing thereafter, it would have discovered the defect which was the proximate cause of the accident; (19) that the Otis Elevator Company did not exercise ordinary care in installing and maintaining the elevator.

[1, 2] We shall first dispose of the assignments of error urged by R. L. Cameron. These assignments are six in number, and a consideration of the brief presenting them is objected to on the ground that the same was not filed in the district court before the transcript was taken out as required by law and the rules of this court; and a consideration of the first, second, and third assignments, which are grouped, is objected to because neither of them constitutes a ground of Cameron's motion for a new trial in the district court, but each is "an attempted summary or abridgement thereof which is not permissible." The briefs do not appear to have been filed in the district court before the transcript was taken from that court and filed in this court, and neither of the assignments of error is a literal or full copy of the corresponding ground set up in the motion for a new trial; but our conclusion is they ought to be considered. The failure to file briefs in the lower court is, under rule 39 (142 S. W. xiii), a ground for dismissing the appeal or writ of error for want of prosecution, upon motion made by appellee or defendant in error, unless good cause is shown why it was not done in the time and manner as prescribed and that they have been filed at such time and under such circumstances as that the appellee or defendant in error has reasonably not suffered any material injury by the defense of the case in the appellate court. The motion to dismiss, as authorized and contemplated by the rule referred to, was not filed by the defendants in error and an opportunity thereby afforded the plaintiff in error Cameron to show in reply thereto why the briefs were not filed as directed by the rule; and that the plaintiffs in error have not suffered any material injury in the defense of the case in this court, because briefs were not filed in the district court, seems manifest. They filed in this court, in a few days after the filing of briefs by the plaintiffs in error, reply briefs, which, in the opinion of this court, fully and satisfactorily answer the contentions made by the plaintiffs in error. As to the imperfection of the assignments of error as presented in the briefs, in that neither of them is a full copy of the ground set up in the motion for a new trial, it is sufficient to say they, taken in connection with the propositions advanced thereunder, state enough of the ground of the motion for a new trial to direct the attention of this court to and to make plain the error intended to be assigned and of which complaint is made.

[3-6] The substance of the first three assignments of error is that the trial court erred in not sustaining R. L. Cameron's motion for judgment in his favor upon the findings of the jury because such findings and the evidence show that he (Cameron) was not guilty of any negligence which proximately caused the accident and injury to Lloyd Harpold, but show that said accident

and injury resulted proximately from acts of negligence committed by the defendant Otis Elevator Company. The assignments will be overruled. R. L. Cameron owed to Lloyd Harpold, the son of the defendants in error, and his employé, the duty to exercise ordinary care to furnish him a reasonably safe place to work and reasonably safe appliances with which to work. This, as applied to the case at bar, included the duty to make such tests of the elevator in question, or of its different parts, as a person of ordinary prudence would make to discover dangerous defects, and such duty could not be delegated so as to relieve him (the master) of responsibility. The evidence shows that Mr. Cameron negligently failed to furnish Lloyd Harpold a reasonably safe place to work and negligently failed to furnish him reasonably safe appliances with which to work. The elevator with which he was put to work and which fell and caused his death was composed in part of a defective gear wheel. No inspection whatever was made by Cameron of the gear wheel, and because of its defect it collapsed. The jury found that a person in the exercise of ordinary care and by the tests in general use for the testing of such castings could have discovered the weakened and defective condition of the gear wheel after the same was installed and prior to the collapse thereof, and that a person in the exercise of ordinary care in furnishing a reasonably safe place for employés to work in and about the elevator would have inspected the same by the application thereto of known and ordinary tests to discover weaknesses in the gear wheel prior to the collapse thereof on May 28, 1915. They further found that the elevator at the time of the accident was in a structurally dangerous condition, in that there was a sand hole and crack in the gear wheel, and that this structurally dangerous condition was the proximate cause of the accident. The issue of whether or not the failure of R. L. Cameron to inspect the gear wheel was a proximate cause of the death of Lloyd Harpold does not appear to have been submitted to the jury, or that its submission was requested, and there is no specific finding by them upon it. They did find as shown that the gear wheel was defective, and that such defect was the proximate cause of the collapse of the elevator. They further found that the defect in the gear wheel could have been discovered by any reasonable inspection and that R. L. Cameron made no inspection prior to the accident is undisputed. The evidence is amply sufficient to warrant the finding that the negligence of Cameron in failing to inspect and discover the defect in the gear wheel was, as between Cameron and Lloyd Harpold, the proximate cause of the latter's death. It is statutory, and affirmed by several decisions of our appellate courts, that upon appeal or writ of error an issue not submitted and not requested by a party to the case shall be deemed as found by the court in such manner as to support the judgment provided there be evidence to sustain such finding. The fact that the elevator, including the defective gear wheel, was manufactured by the Otis Elevator Company, and the finding of the jury that the "structurally dangerous condition" of the elevator was the proximate cause of the accident, does not materially affect the question. It has been held that—

"It is not essential that a cause should act alone in order to constitute it the proximate cause; but, if it concurs with another cause in producing the result, it will be a proximate cause, and one or both of the instruments setting the cause in motion will be liable for the damages arising therefrom." Railway Co. v. Vollrath, 40 Tex. Civ. App. 46, 89 S. W. 279.

The negligence of R. L. Cameron, as above indicated, was, as between him and Lloyd Harpold, the proximate cause of the accident which resulted in Harpold's death, and that negligence cannot be excused and liability escaped on the ground that the Otis Elevator Company was guilty of negligence in the manufacture of the gear wheel.

The remaining assignments of R. L. Cameron assert, in effect, that the finding of the jury that the plaintiffs had sustained damages on account of the death of their son, Lloyd Harpold, in the sum of $3,200, is unsupported by the evidence, and the judgment rendered in their favor for that amount is excessive. These assignments are without merit. The evidence was sufficient to support the findings of the jury as to the amount of the damages, and the judgment is not excessive.

[7-9] This brings us to the consideration of the single assignment of error presented by the Otis Elevator Company in the appeal prosecuted from the judgment rendered against it in favor of R. L. Cameron on his cross-action. This assignment is as follows:

"The court erred in entering final judgment in favor of the defendant R. L. Cameron over against defendant Otis Elevator Company, because this defendant says that the same is not warranted by the facts given in evidence, or by the findings of the jury on the special issues submitted, or by the law of the case."

R. L. Cameron objects to the consideration of this assignment, which is submitted as a proposition, on the ground that it is too general. The criticism of the assignment may be justified by decisions in this state, but we have concluded that the assignment is sufficient to direct our attention to the error complained of and that it ought to be considered. Argument has been made and authorities cited to show that the Otis Elevator Company, irrespective of the jury's finding that Lloyd Harpold was guilty of contributory negligence, was not liable to the plaintiffs E. C. Harpold and wife for the damages sustained by them in the death of their son. This is a question with which we are not

specially concerned on this appeal. The question for our decision is whether or not R. L. Cameron, having suffered a recovery on account of Lloyd Harpold's death, has the right to be indemnified by the Otis Elevator Company, who manufactured and sold to Cameron the defective elevator, which, because of the defect, fell and killed Cameron's employé. This question must be determined regardless of whether or not E. C. Harpold and wife were entitled to judgment against the Otis Elevator Company. It may be said, however, that since the relation of master and servant did not exist between the Otis Elevator Company and Lloyd Harpold, and since the jury found that Lloyd Harpold was guilty of contributory negligence, plaintiffs E. C. Harpold and wife, for that reason, if for no other, were not entitled to recover against said company. But the fact that Lloyd Harpold was guilty of negligence which caused or proximately contributed to his injury and death is unimportant in determining whether or not R. L. Cameron, since judgment has been recovered against him on account of the death of one of his employés as a result of the structurally defective elevator, can enforce indemnity against the Otis Elevator Company, the manufacturer and seller of the elevator to Cameron.

The difficulties in the way of holding a person liable for damages when the tort of another has intervened between his act and the result complained of seems to have been very generally recognized, and the authorities upon the question are conflicting.

The general rule that there can be no contribution or indemnity as between wrongdoers or tort-feasors is well settled. But there is an exception to this general rule which is as well established as the rule itself. In City of San Antonio v. Smith, 94 Tex. 266, 59 S. W. 1109, the exception is stated by our Supreme Court in the following language:

"It is well settled that, under some states of fact, two parties may be liable to another for a tort, the one by construction of law, on account of some omission of a duty of protection or care owed, and the other, because he is the active perpetrator of the wrong, and that in such cases the right of indemnity may exist in the one whose wrong was only a secondary one."

In that case the city of San Antonio was sued for creating a nuisance by its sewage; and the city caused Hildebrand and Hamilton to be made defendants, for the purpose of recovering over against them any sum which it might be required to pay to plaintiff. The right to recover over against Hildebrand and Hamilton was based upon pleadings, briefly stated, charging that they had rented from the city its farm upon which it had provided for the disposition of its sewage, and that they, as the city tenants, had interfered with such established arrangements so as to turn the sewage into and pollute Piedra creek, to plaintiff's injury. In the discus-

sion of the case, the Supreme Court said, among other things, that, while the facts averred by the city did not exempt it from liability to the plaintiff Smith, they showed that such liability was brought about by the active interference of its tenants, and arose merely from the use of its sewers in a way which through such interference alone, caused the injury.

In City of San Antonio v. Talerico, 98 Tex. 151, 81 S. W. 518, the plaintiff sued the city to recover damages for personal injuries received by stepping in a hole which the city had negligently allowed to exist in a sidewalk on one of its streets. The city caused the St. Joseph's Orphan Asylum to be made a party defendant and sought judgment over against it in case plaintiff recovered. The pleading upon which the city sought judgment over against the St. Joseph's Orphan Asylum alleged that the dangerous condition of the sidewalk was created by the action of the asylum; that the injury for which plaintiff sought to recover was caused by the negligence of the asylum in making the sidewalk with the hole in it and the bridge by which the hole was hidden from plaintiff, in consequence of which he stepped into it; and that this was done without the knowledge or consent of the city. A general demurrer was sustained to the city's pleadings, the St. Joseph's Orphan Asylum dismissed from the case, and the plaintiff recovered judgment against the city. In holding that the general demurrer was improperly sustained, the Supreme Court said:

"The pleading showed that St. Joseph's Orphan Asylum was the original and active perpetrator of the wrong for which the city, without participation therein but only by reason of its passive negligence, was sought to be held responsible. A case was made for impleading the party thus primarily liable."

Thus it was ruled that a city held liable for personal injury caused by a defective sidewalk, which the city negligently allowed to exist, may recover over against the person whose wrongful act caused its dangerous condition. If therefore indemnity could be enforced under the facts alleged in the case just referred to, why may not R. L. Cameron enforce indemnity against the Otis Elevator Company in the case at bar? The facts of the two cases are strikingly similar. In the Talerico Case the St. Joseph's Orphan Asylum, without participation therein on the part of the city, constructed a defective sidewalk which the city negligently allowed to exist, in consequence of which Talerico was injured. In the case at bar the Otis Elevator Company manufactured, furnished, and installed for Cameron a defective elevator, and because of its structural defect, of which Cameron had no actual knowledge, it fell and killed his employé, Lloyd Harpold. So that, if the St. Joseph's Orphan Asylum was the original and active perpetrator of the wrong ,for which the city of San Antonio was held li-

able, it must be said, we think, that the Otis Elevator Company was the original and active perpetrator of the wrong for which R. L. Cameron was held responsible in this case, and that the negligence of the said Cameron, and for which he was held liable to the plaintiffs, was only passive. If this is correct, then, according to the logic of the Talerico Case, the Otis Elevator Company was primarily liable for the death of Lloyd Harpold, and, although the plaintiffs could not recover judgment against it because of Lloyd Harpold's contributory negligence, R. L. Cameron, upon his pleadings and the facts could enforce indemnity against said company.

The case of Railway Co. v. Pigott, 54 Tex. Civ. App. 367, 116 S. W. 841, in which a writ of error was refused, also sustains this view. In that case the relation of employer and employé existed. The employé who was the son of the plaintiffs, while in the performance of his duties, received an electric shock which resulted in his death. The defendant used and maintained electric lights, one of which was attached to a flexible extension cord, so that it could be moved in the shop from place to place where it was needed. At the time the defendant's employé was shocked and killed, this light was being used inside a metallic tank, under which the employé was working, and the cord fastened to or resting upon some part of the tank. The extension cord was defective and unsafe for use, in that it was not properly insulated, and because of its defective condition a current of electricity passed therefrom into the tank, charged it with electricity, and the employé, coming in contact with the tank, was shocked and killed. The San Antonio Gas & Electric Company operated an electric plant in the city of San Antonio and furnished and installed the wires and appliances in the defendant's shop for its use. That company was impleaded in the suit by the defendant, and, upon full allegations charging that it was negligent in furnishing defective wire and appliances for the use of defendant, the defendant prayed that, if it should be held that defendant was liable to the plaintiffs for any amount whatever, it have judgment over against the electric company for any and all sums recovered against it. A general demurrer, interposed by the electric company to all that portion of the defendant's answer by which judgment over against it was sought, was sustained, and said company dismissed from the suit. On appeal, the Court of Civil Appeals for the Fourth District held that the part of the defendant's answer to which the demurrer was sustained brought the case within the exception to the general rule that there can be no contribution or indemnity as between wrongdoers, and that the demurrer was improperly sustained. The court announced the exception to the general rule mentioned to be that, when one wrongdoer is blameless as between himself and a joint wrongdoer, the latter must indemnify the former for all damages recovered against him by the person injured.

The case of Boston Woven Hose & Rubber Co. v. Kendall, 178 Mass. 232, 59 N. E. 657, 51 L. R. A. 781, 86 Am. St. Rep. 478, decided by the Supreme Judicial Court of Massachusetts, Chief Justice Holmes writing the opinion, seems to be directly in point. That was an action to recover damages which the plaintiff had to pay to its employés for personal injuries caused by an explosion of a boiler made by the defendants. The defendants, who were first-class boilermakers, undertook to make for the plaintiff a boiler which would stand a pressure of 100 pounds, and understood that the boiler was to be used to contain naphtha vapor for experiments, in devulcanizing india rubber. An experiment was tried, and, at a pressure of less than 100 pounds, the naphtha vapor blew out the packing between the door and the end of the boiler by the side of the hinge, escaped into the air, ignited, and caused the damage for which the plaintiff had to pay. The court held that, the plaintiff's misconduct in failing to discover by inspection the defect in the boiler having rendered him liable for damages for the injuries received by his employés, he was entitled to recover over against the defendant, the party who made and furnished the defective boiler. In discussing the case the court said, among other things:

"If indemnity ever is to be recovered, short of an express contract of insurance, for what is in form the result of a tort on the plaintiff's part, this case belongs to that class in which it should be allowed."

But the appellant Otis Elevator Company cites, among others, the case of Railway Co. v. Nass, 94 Tex. 255, 59 S. W. 870, in support of its contention that indemnity cannot be enforced against it under the facts in the present case. The case apparently supports the contention, but the cases of our Supreme Court referred to and reviewed by us above were decided by that court after the decision in the Nass Case, and control, we think, the decision of the present case, even though they are inconsistent with the decision made in the Nass Case. The court sought to distinguish the case of City of San Antonio v. Smith, supra, from the case of Railway Co. v. Nass; but no mention of the latter case is made in City of San Antonio v. Talerico, which is perhaps more directly in point in the present case. In both the Smith Case and the Talerico Case the facts showed liability on the part of the city because of its negligence which contributed to cause the injury sustained by the respective plaintiffs in those cases, and yet it was held in both cases, notwithstanding the holding in the Nass Case, that the party seeking indemnity could not recover because its negligence contributed to the injury; that the city was entitled to be indemnified by its joint wrongdoer. We think it may be said

here, as was said by Chief Justice Holmes, in Boston Woven Hose & Rubber Co. v. Kendall, supra, that if indemnity ever is to be recovered, short of an express contract of insurance, for what is in form the result of a tort on the part of R. L. Cameron, this case belongs to the class in which it should be allowed.

[10-12] There was no express agreement between Cameron and the Otis Elevator Company which would require the latter to respond to the former in respect to defects that might exist in the elevator to be furnished. The written contract under which the elevator was furnished and installed contained no such agreement, nor did it contain any express guaranty that it should be free from defects. It simply stated, after giving the specifications of the elevator and its lifting capacity, that "all material and workmanship covered by our guaranty (which was not disclosed) against defects for one year." The period of time mentioned in this clause of the contract had expired before the accident in question; but we regard neither this fact, nor the fact that there was no express agreement for indemnity, of serious importance in determining the question of R. L. Cameron's right to enforce indemnity against the Otis Elevator Company. Neither do we regard the fact that the Otis Elevator Company, as found by the jury, did not actually know that the gear wheel of the elevator was defective, of controlling importance in determining that question. The agreement to furnish and install the elevator implied, as between Cameron and the Otis Elevator Company, that all the parts of the elevator would be suitable and safe for the uses to which it was to be put; and the jury found, upon testimony warranting such finding, that the Otis Elevator Company knew at the time it installed the elevator that the same would be used by persons other than R. L. Cameron, that Cameron relied on the Otis Elevator Company exercising ordinary care to manufacture and install for him a reasonably safe elevator, and that said company knew that he was relying on it to exercise such care. The jury further found that such care was not exercised by said company in installing and maintaining said elevator. This reliance was evidently induced, as the Otis Elevator Company must have known, because of its expert knowledge and Cameron's lack of judgment and knowledge in such matters. The fact that such reliance was not justified as toward Cameron's employés "does not do away with the fact that the Otis Elevator Company invited it with notice of what might be the consequence if it should be misplaced," and we know of no rule or policy of the law which would, when all of the facts of the case are considered, deny to Cameron the indemnity sought and recovered by him. The fact that Cameron had not taken out workmen's compensation insurance does not alter the case.

Our conclusion is that the judgment in favor of E. C. Harpold and his wife, L. B. Harpold, against R. L. Cameron, and the judgment in favor of R. L. Cameron over against the Otis Elevator Company, should be affirmed, and it is so ordered.

---

&⟶For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes