## CITY OF SAN ANTONIO v. R. O. SMITH AND HILDEBRAND AND HAMILTON.

### No. 952. Decided December 20, 1900.

**1. Tort—Indemnity—Pleading.**

See pleading, by a city sued for creating a nuisance by its sewage, seeking indemnity from tenants leasing its sewage farm, which is held to sufficiently allege that the nuisance was solely caused by the interference of such tenants with disposition of the sewage on the farm. (Pp. 269-271.)

**2. Indemnity—Facts Defeating Plaintiff's Action.**

A defendant can not show, against one made a party by him, a right to indemnity against the judgment to be recovered by plaintiff, by alleging facts which would necessarily defeat plaintiff's right to recover. (P. 271.)

**3. Joint Wrongdoers—Indemnity Between.**

In general there is no contribution or indemnity between joint active wrongdoers; but in some cases two parties may be liable to another for tort, one by construction of law on account of omission of a duty of protection or care owed, and the other because he was the active perpetrator of the wrong,—in which case he may be liable to indemnify the one whose wrong was only secondary. (Pp. 271, 272.)

**4. Same—Nuisance—Landlord and Tenant.**

See pleadings held to show a right to recover on the part of a city which, being sued for creating a nuisance by polluting a stream with sewage, sought indemnity from its tenants who, having rented from it a farm upon which it had provided for disposition of its sewage, interfered with such established arrangements so as to turn the sewage into and pollute the stream, to the injury of plaintiff. (Pp. 268-272.)

**5. Same.**

Tenants renting from the city premises arranged for disposing of its sewage without injury to others, though not bound contractually to control the sewage, owed the city the duty of refraining from such interferences with the arrangements made as would cause injury that would not otherwise have happened, and if they did so interfere would be bound to indemnify the city for loss thereby occasioned to it if it was not in fault except in continuing the discharge of sewage creating the nuisance. (Pp. 271, 272.)

**6. Nuisance—Joint Wrongdoers—Indemnity—Cases Distinguished.**

This case distinguished from Railway v. Nass, ante, p. 255, in which the negligence of the party seeking indemnity was the immediate cause of the injury, that of the other party being merely the occasion. (P. 272.)

ERROR to the Court of Civil Appeals for the Fourth District, in an appeal from Bexar County.

Smith sued the city for damages caused by a nuisance and the city made Hildebrand and Hamilton parties, claiming indemnity from them against plaintiff's judgment. Plaintiff recovered and the city was denied indemnity on its plea over, and this holding being affirmed on appeal, obtained writ of error.

*J. C. Baker* and *Geo. C. Altgelt*, for plaintiff in error.—Defendants Hamilton and Hildebrand, the lessees of the defendant city of San Antonio, are liable over to defendant city for any recovery that may be had against it in this suit, because defendant city furnished them adequate means to prevent injury to others, but they declined to use such means. Nor is it necessary that the city should allege that they had agreed to turn said water into the filter beds, or that a duty rested upon them to do so. Nor is it necessary to allege that the water from said sewers would not have run into the river if it had not have been for the acts of the defendants. City of Chicago v. Robbins, 2 Black (U. S.), 418; Robbins v. Chicago, 4 Wall. (U. S.), 657; Jacobs v. Pollard, 10 Cush., 287; Acheson v. Miller, 2 Ohio St., 203; Armstrong County v. Clarion County, 66 Pa. St., 218. For full discussion see note vol. 73, Am. Dec., 148.

*Denman, Franklin, Cobbs & McGown*, for defendants in error.—If the sewer farm as operated at the time of the lease to Hildebrand and Hamilton was not a nuisance, but merely became so by the manner in which it was operated by Hildebrand and Hamilton, then the city, as lessor, was not liable to the plaintiff, and therefore, the city having a perfect defense to plaintiff's claim, could not call in Hildebrand and Hamilton for indemnity, since in the nature of things there can be no indemnity where there is no liability. Harris v. Cohen, 50 Mich., 324; Saltonstall v. Banker, 74 Mass., 195.

If, on the contrary, the daily outpouring of the sewage, which, as plaintiff's petition alleges, continually ran into the creek and thence into the river, by natural gravitation, constituted an active, continuing nuisance to plaintiff, then the plaintiff is an active tort feasor and could

not demand indemnity of the tenants Hildebrand and Hamilton, who would be mere tenants for years, using the premises with the nuisance thereon as they found it. City of Corsicana v. Tobin, 57 S. W. Rep., 319; McDonough v. Gilman, 85 Mass., 264; City of Peoria v. Simpson, 110 Ill., 294; Jackman v. Arlington Mills, 137 Mass., 277.

If it be conceded that the daily outpouring of the sewage constituted a nuisance and that Hildebrand and Hamilton, tenants of the sewer farm, continued to permit it to escape as they found it, they would not be liable even to the plaintiff, and of course not to the city, at least until they were notified to abate the nuisance, and no such notification is alleged in the city's pleadings. McDonough v. Gilman, 85 Mass., 264.

The pleadings of the city against Hildebrand and Hamilton having been specially excepted to in the trial court because there was no allegation that Hildebrand and Hamilton had agreed to turn the water into the filters, and the city having declined to allege such an agreement, it should be assumed that no such agreement existed, and since the plaintiff's case against the city is based upon the theory that the city is daily unlawfully pouring its sewage upon the surface of the ground at a point from whence it runs into the river, and must recover upon that ground, if at all, against the city, the latter can not claim indemnity against its tenants by merely alleging that they had control of the water and right to use it on the farm, without further alleging that they had obligated themselves to prevent its escape therefrom, for the mere right to use does not impose the burden of preventing the escape of such as they do not use.

The right of the plaintiff to recover from the city being based upon the proof of the allegation that the city was pouring its sewage out at a point where it would naturally run into the river, neither the plaintiff's nor the city's rights would be in the least affected by any diversion of the water by Hildebrand and Hamilton as it passed over the sewer farm, unless it were alleged that but for such diversion the water would not have reached the river and injured the plaintiff as alleged in his petition, for without such allegation it would not appear that the diversion alleged in the city's pleadings in any way contributed to plaintiff's damage, and the trial court having sustained the second exception because of the lack of such an allegation, this court should assume that such allegation could not have been truthfully made.

WILLIAMS, Associate Justice.—Smith brought this suit against the city to recover damages caused by a nuisance alleged to have been created by it; and the city caused Hildebrand and Hamilton to be made defendants for the purpose of recovering over against them any sum which it might be required to pay to plaintiff. A general demurrer and special exceptions interposed by Hildebrand and Hamilton to the pleading of the city against them were sustained and judgment was entered, dismissing them from the cause. A judgment was

rendered in favor of plaintiff against the city, from which both appealed to the Court of Civil Appeals, the city assigning error against Hildebrand and Hamilton upon the ruling sustaining their demurrers. The Court of Civil Appeals affirmed the judgment in favor of Hildebrand and Hamilton, but, in favor of plaintiff, reversed the judgment as between him and the city and remanded the cause. The city obtained this writ of error from the judgment of affirmance in favor of Hildebrand and Hamilton, and the only question before us arises upon that judgment.

Plaintiff's petition alleged that the outflow from the city's sewer system was emptied upon its sewer farm below the city; that the sewer farm bordered on Piedra Creek and that the natural flow of water and sewage was into the creek and thence into San Antonio River; that the city conducted the flow of the sewage into the creek and negligently permitted such sewage to be discharged into the creek and thence into the river, thereby polluting its water and creating a nuisance which injured plaintiff's premises, situated on the river below the mouth of the creek.

The pleading by which the city sought to charge Hildebrand and Hamilton was as follows:

"Further answering, defendant says that it is not now in the possession of the lands named in plaintiff's petition and designated as defendant's sewer farm, and was not in the possession of the same for two years next before the institution of this suit, but that the same now are, and for said period of time were, in the possession of H. E. Hildebrand and R. W. Hamilton, both of whom reside in said Bexar County, and that said Hildebrand and Hamilton hold and held said lands under defendant city and as its tenants; that during said time said Hildebrand and Hamilton had exclusive control of the waters and sewage issuing from said system of sewers, and that they, the said Hildebrand and Hamilton, without defendant's consent, diverted said water and sewage from said sewer farm into said Piedra Creek.

"Defendant further avers that it did not turn or direct said water and sewage into said Piedra Creek or into the San Antonio River, but that it did provide a tract of land of 600 acres wherein said water and sewage should, and reasonably could, be consumed without injury to plaintiff or anyone else, yet that defendants Hildebrand and Hamilton, upon their own responsibility and without authority from this defendant, did turn said water and sewage into said Piedra Creek and San Antonio River, and by their acts alone, without contribution or fault on the part of this defendant, did cause plaintiff's injury.

"Defendant further avers that before the completion of said system of sewers and before said Hildebrand and Hamilton took charge of said lands as defendant's tenants, it did build and construct filter beds, adequate in area and size and capable of holding said water, and into which all surplus water should have been run by said Hildebrand and Hamilton, and the use of which on their part would have prevented the

running of sewage into said Piedra Creek; that said filter beds were properly constructed and intended to hold such surplus water, but that said Hildebrand and Hamilton failed and refused to use same, but upon their own responsibility, turned the surplus water and sewage into Piedra Creek.

"Defendant further shows that it has never cultivated or operated said sewer farm, but that the same is being cultivated and was cultivated by said Hildebrand and Hamilton during said period of time, and if any sewage was turned into the San Antonio River to plaintiff's injury, the same was so turned into said river by defendant's said tenants, without defendant's knowledge or consent.

"Defendant prays judgment and for its costs, and the said Hildebrand and Hamilton having been cited herein, defendant further prays that if plaintiff shall recover judgment against this defendant, that it have judgment over against said defendants Hildebrand and Hamilton, for costs," etc.

The exceptions urged were a general demurrer that the pleading showed no cause of action, and these special exceptions: "(1) Said amended answer does not allege that Hildebrand and Hamilton agreed or obligated themselves under or by the terms of the lease to turn the water into the filters, and does not state any facts showing any duty upon them to do so. (2) It does not allege that the water would not have run into the river if it had not been for the acts of the defendants."

We shall first consider the propositions contained in the special exceptions.

It is clear that no contractual duty on the part of Hildebrand and Hamilton to properly dispose of or arrest the course of the sewage is shown, and it is equally true that the law would not, in the absence of contract, impose upon the tenant of the farm any such obligation. Their liability must therefore arise, if at all, from the principles applicable to torts. The plea contains the allegations that the city had provided a farm and filter beds which "could and should" have consumed the outflow; that the city did not "turn or direct" the sewage into the creek, but that Hildebrand and Hamilton "diverted" it from the farm into the creek, without the authority, knowledge, or consent of the city.

If the allegations stopped here, it may be true that the objection urged in the second special exception would be good. Since, upon special exception, the allegations must be construed most strongly against the pleader, it might be truly said that, although the filter beds "could and should" have consumed the sewage, this allegation does not necessarily charge that they were doing so before the intervention of the tenants, or that they would have done so but for such intervention; and it might also be justly said that the averment, that Hildebrand and Hamilton turned and directed the sewage into the creek, might be true, consistently with the other fact alleged by plaintiff, that the

sewage, when discharged by the city upon the farm, would naturally flow into the creek. So with the allegation that the city did not turn or divert the outflow into the creek. It might have discharged it at a place from which it naturally flowed into the creek. The objection to the plea would arise on account of its vagueness and its admitting of more than one construction. But we think this uncertainty is removed by the averment that Hildebrand and Hamilton "upon their own responsibility, * * * did turn said water and sewage into said Piedra Creek and San Antonio River, and by their acts *alone, without contribution or fault* on the part of this defendant, did cause plaintiff's injury." If this is true, the act of these parties in diverting the water was the sole cause of the injury, and this includes in another and proper form the fact mentioned in the special exception, that the sewage would not have gone into the creek but for that act.

But it is urged that if this be true there would be no liability of the city to plaintiff, and therefore no right in it to bring these parties in. We think it is true that if the facts alleged would necessarily have defeated the plaintiff, there would be no basis for pleading over against Hildebrand and Hamilton. But under all of the pleadings, there might be a state of facts under which both would be liable to the plaintiff, and Hildebrand and Hamilton, at the same time, bound to indemnify the city. The city, by its answer, admitted that it continued to use the sewer farm as a place for the reception of its sewage, after Hildebrand and Hamilton had so dealt with the farm that the sewage was turned into the creek. The case is not one where the entire use and control of the property was in the tenant, but the landlord continued to use it in connection with its sewer system and to discharge its sewage there so that it went into the creek and inflicted the injury. After the conditions were created, though by the intervening act of the tenant, under which the continued discharge from the sewers created the nuisance, the city did not have the right to injure the plaintiff by continuing to send its filth through this channel; and its doing so might make it liable to the plaintiff, although the tenants were also liable.

Here it is urged that this theory of the case would make the city an active wrongdoer and would exclude any right in it to demand indemnity, upon the principle that there can be no contribution between joint wrongdoers. We shall not undertake a general discussion of this principle, its true application and limitations. It is well settled that under some states of fact, two parties may be liable to another for a tort, the one by construction of law, on account of some omission of a duty of protection or care owed, and the other, because he is the active perpetrator of the wrong, and that in such cases the right of indemnity may exist in the one whose wrong was only a secondary one. While the facts averred by the city may not exempt it from liability to the plaintiff, they show that such liability was brought about by the active interference of its tenants, and arises merely from the use of its

sewers in a way which, through such interference alone, caused the injury. Although the tenants did not, merely by their position as such, become bound contractually to control the sewage, and prevent it from producing injurious consequences, we think it is also true that they did owe to the city the duty of refraining from such interferences with the arrangements made by it for the disposition of the sewage as would cause an injury which would not otherwise have happened; and if they did so interfere, they would be bound to indemnify the city for any loss thereby occasioned to it, if it was not in fault except as just supposed. City of Chicago v. Robbins, 2 Black, 418; Robbins v. Chicago, 4 Wall., 657.

This view distinguishes the case from that of Galveston, Harrisburg & San Antonio Railway Company v. Nass and International & Great Northern Railway Company, recently decided by this court, ante, p. 255. In that case, the first named company was held liable for an injury of which its own negligence was the immediate cause, the preceding negligence of the other company only giving rise to the occasion, while in this, the alleged wrong of Hildebrand and Hamilton was the immediate cause, and, through it, liability attaches to the city, which, as between the two, is innocent of wrong.

The judgment of affirmance in favor of Hildebrand and Hamilton is reversed, and the cause, as between them and the city, is also remanded.

*Reversed and remanded.*